UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RECARDO BROWN,

                    Petitioner,

v.                                    Case No. 3:10-cv-749-J-37TEM

SECRETARY, DOC,
et al.,

                    Respondents.
_____

## ORDER

### I. Status

     Petitioner is currently eleven plus years into a life sentence
for armed burglary, aggravated battery and aggravated assault.
While the record reveals facts that give rise to serious misgivings
about reliability of the jury verdict, his merits challenge to the
constitutionality of the state court conviction faces the
substantial impediment of the one year limitations period of the
Antiterrorism and Effective Death Penalty Act (AEDPA).  Petitioner
Recardo Brown initiated this action by filing a pro se Petition for
Writ of Habeas Corpus (Petition) (Doc. #1) and Memorandum of Law
(Doc. #2) under 28 U.S.C. § 2254 on August 18, 2010, pursuant to

the mailbox rule.[1]   In the Petition, Petitioner challenges a 2002
state court (Duval County, Florida) judgment of conviction for
armed burglary, aggravated battery, and aggravated assault.
Respondents submitted a response to the Petition entitled Motion to
Dismiss (Response) (Doc. #8) with Exhibits.  Additional Exhibits
were filed on November 10, 2011 (Doc. #16).[2]  Petitioner filed a
Reply Brief (Reply) (Doc. #12).[3]

## II. One-Year Period of Limitation

Of note, AEDPA imposes a one-year statute of limitations on
petitions for writ of habeas corpus.  Specifically, 28 U.S.C. §
2244 provides:

> (d)(1)  A 1-year period of limitation
> shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant

---

[1] While incarcerated at Washington Correctional Institution,
Petitioner filed the Petition (Doc. #1) in this Court on August 25,
2010; however, giving Petitioner the benefit of the mailbox rule,
this Court finds that the Petition was filed on the date Petitioner
handed it to the prison authorities for mailing to this Court
(August 18, 2010).  See Rule 3(d), Rules Governing Section 2254
Cases in the United States District Courts.  The Court will also
give Petitioner the benefit of the mailbox rule with respect to his
pro se inmate state court filings when calculating the one-year
limitations period under 28 U.S.C. § 2244(d).

[2] The Court hereinafter refers to the Exhibits as "Ex."  Where
provided, the page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of each page of the appendix.
Otherwise, the page number on the particular document will be
referenced.

[3] On August 26, 2010, the Clerk filed the Order to Show Cause
and Notice to Petitioner (Doc. #7), admonishing Petitioner
regarding his obligations and giving Petitioner a time frame in
which to submit a reply.

to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d).

The following procedural history is relevant to the one-year limitations issue. Petitioner was convicted of armed burglary,

aggravated battery, and aggravated assault on February 6, 2002, and he was sentenced to life in prison on March 1, 2002. Ex. 1. He appealed his convictions to the First District Court of Appeal, and on October 27, 2003, the appellate court per curiam affirmed without written opinion. Ex. 2. Petitioner did not seek review in the United States Supreme Court.

Through counsel, Petitioner filed a Motion for Postconviction Relief Under Rule 3.850, Fla. Rules of Criminal Procedure, on September 24, 2004. Ex. 3. The trial court denied the motion, finding it facially deficient. Ex. 4. Through counsel, Petitioner filed an Amended Motion for Post Conviction Relief Under Rule 3.850, Fla. Rules of Criminal Procedure, on October 13, 2005. Ex. 5. In an order filed September 14, 2006, the trial court denied the amended motion for post conviction relief. Ex. 6. Petitioner appealed, and the First District Court of Appeal affirmed per curiam on June 20, 2007. Ex. 7. The mandate issued on August 20, 2007. Id.

On December 7, 2006, pursuant to the mailbox rule, Petitioner filed a motion for DNA testing. Ex. 8. In an order filed on February 6, 2007, the trial court denied the motion. Ex. 9. Petitioner appealed, and in its October 19, 2007 opinion, the First District Court of Appeal reversed the decision of the trial court and remanded for the trial court to determine whether the record conclusively demonstrates that Petitioner is not entitled to relief

4

and requiring the trial court to attach the pertinent portions of the record supporting the court's decision, or if upon further review the record did not refute Petitioner's claims, for the trial court to hold an evidentiary hearing.[4]  Ex. 10.

After additional DNA tests were conducted, Petitioner filed a motion for new trial pursuant to the mailbox rule on May 19, 2008. Ex. 11.  On June 10, 2008, an evidentiary hearing was conducted.[5] Ex. 24.  The trial court denied the motion in an order filed on June 27, 2008.  Ex. 12.  The trial court made a number of findings. First, the court found that Petitioner was found guilty at a jury trial, and was sentenced to serve a term of life as a habitual felony offender.  Id. at 182.  Second, the court recognized that two of the victims, Cheryl Wiggins and Melvin Wiggins, Sr., testified that Petitioner was previously known to them, and they recognized him after Cheryl Wiggins removed the mask and/or bandana from his face.  Id.  Third, the court noted that DNA testing by the Florida Department of Law Enforcement (FDLE) confirmed the presence

---

[4] In his motion, Petitioner asserted "that the DNA test would exonerate him because there was no other physical evidence and the case was based on 'circumstantial contradictory testimony of the victims.'" Ex. 10 at 1-2.  Petitioner also alleged that, although the mask and bandana were previously tested, "subsequent scientific developments in DNA testing techniques likely will produce a definitive result.'" Id. at 2.

[5] Of concern to this Court is the record does not reflect that Petitioner was present for the evidentiary hearing.  Ex. 24.  An Assistant Public Defender appeared on Petitioner's behalf, announced that he could not in good faith file a motion for new trial, and asked to be discharged from further representation of Petitioner.  Id. at 11.

of Petitioner's DNA at several loci on two swabs taken from the mask, and concluded that Petitioner could not be excluded as a donor to the samples. <u>Id</u>. at 182-83.  Fourth, the court stated that no results were obtained by FDLE on the samples from the bandana. <u>Id</u>. at 183.  Fifth, the court said that testing from DNA Labs International confirmed the presence of Petitioner's DNA at all loci detected in a partial Y-DNA profile obtained from the mask, and concluded that Petitioner could not be excluded as a donor to the minor component of the Y-DNA profile. <u>Id</u>.  Sixth, as to the mask, the court found a partial Y-DNA profile obtained by DNA labs International indicated a mixture of at least four male donors, none of whom was Petitioner. <u>Id</u>.  And finally, seventh, the trial court reiterated the stipulation that was entered into at trial concerning FDLE DNA testing of the mask. <u>Id</u>.

The trial court noted that Petitioner "has consistently maintained his innocence." <u>Id</u>.  The court went on to find that "none of the subsequent DNA testing serves to exonerate the Defendant." <u>Id</u>. at 184.  The court said:

> While DNA Labs, International did not identify the Defendant's DNA on the portion of the mask which they tested, FDLE <u>did</u> identify the Defendant's DNA at multiple loci in two different areas on the mask (such that he could not be excluded as a donor).  While FDLE did not detect any DNA results on the bandana, DNA Labs, International <u>did</u> find the Defendant's partial DNA profile at the location on the bandana tested by them (such that he could not be excluded as a donor). Taken in conjunction with the testimony

> adduced at trial from both victims, the Court
> finds that the DNA testing did not, does not,
> and cannot, exonerate him.

Id.

The court found that there was no realistic probability that the new DNA testing results would change the verdict. Id. The court concluded that the information gleaned from DNA testing could neither confirm nor exclude Petitioner as the perpetrator. Id. at 184-85. Finally, the court concluded that based on the significant weight of the evidence against Petitioner, the DNA test results did not detract from the court's finding at the original trial. Id. Finally, the trial court denied the motion for new trial. Id. at 185.

Thereafter, Petitioner appealed, and the First District Court of Appeal per curiam affirmed on June 25, 2009. Ex. 13. The mandate issued on July 21, 2009. Id.

Petitioner's conviction became final on Monday, January 26, 2004 (90 days after October 27, 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion."). He did not file a petition for writ of certiorari. Petition at 2. The limitations period ran for a period of 242 days, until Petitioner filed his Rule 3.850 motion for post conviction relief in the trial court on

September 24, 2004.  On August 20, 2007, the First District Court of Appeal issued its mandate concluding its review of the Rule 3.850 motion.[6]  Petitioner had 123 days remaining of the one-year limitations period.  The one-year limitations period expired on Friday, December 21, 2007.  Once the limitations period expired on Friday, December 21, 2007, no state collateral proceedings filed thereafter tolled the statute of limitations because there was "no period remaining to be tolled."  Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (citation omitted), cert. denied, 534 U.S. 1144 (2002).  Given the record, Petitioner's August 18, 2010 Petition is untimely filed and due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted.

It is true that Petitioner filed a motion for DNA testing on December 7, 2006; however, in Florida, a motion for DNA testing is not an application for post conviction or other collateral review with respect to the pertinent judgment for purposes of 28 U.S.C. § 2244(d)(2).  Brown v. Sec'y for Dept. of Corr., 530 F.3d 1335, 1337 (11th Cir. 2008).  See Response at 3-4.  Indeed, a motion pursuant to Florida Rule of Criminal Procedure 3.853 is a discovery motion and does not toll the running of the limitations period.  Leath v.

---

[6] Of note, the limitations period is not tolled during the pendency of a petition for certiorari to the United States Supreme Court seeking review of the denial of state post conviction relief. Lawrence v. Florida, 549 U.S. 327, 331-32 (2007).

McNeil, No. 3:07-cv-145-J-32HTS, 2008 WL 5427781, at *2 (M.D. Fla. Dec. 30, 2008) (not reported in F.Supp.2d).  Petitioner, in his Reply, contends that his motion for DNA testing produced exculpatory evidence, and he is entitled to a year from that discovery, subject to any tolling while related state collateral remedies are pursued, to challenge his conviction in federal court, relying on 28 U.S.C. § 2244(d)(1)(D).  See Reply at 6.  This provision, however, is inapplicable to Petitioner's assertion of actual innocence.  An explanation follows.

Under 28 U.S.C. § 2244(d)(1), "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." Additionally, the limitation period runs from the latest of several dates, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).  Here, the assertion of actual innocence is not a claim but rather a gateway to consideration of constitutional claims time-barred under AEDPA. The question of actual innocence under these circumstances is not a "claim" raised under 28 U.S.C. § 2254.  "An actual innocence allegation is, instead, a 'gateway through which a habeas petition must pass to have his otherwise barred constitutional claim considered on the merits.'" Sibley v. Culliver, 377 F.3d 1197, 1207

n.9 (11th Cir. 2004) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993)).

In the alternative, if it is considered a "claim" raised pursuant to 28 U.S.C. § 2254, the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence is March 24, 2008, the date of the Certificate of Analysis of the STR DNA test results from DNA Labs International. <u>See</u> Reply, Exhibit D, March 24, 2008 DNA Labs International Certificate of Analysis. Since Petitioner's motion for DNA testing produced newly discovered exculpatory evidence, he was granted "a year from that discovery, subject to tolling while related state collateral attacks are advanced, to challenge [his] conviction in federal habeas proceedings." <u>Brown</u>, 530 F.3d at 1338 (citation omitted). The mandate issued on these proceedings on July 21, 2009. Thus, this one-year period, if applicable, expired on Wednesday, July 21, 2010. The federal Petition was filed on August 18, 2010, beyond the expiration of the most liberal application of the one-year limitation period to the procedural history.

Alternatively, to the extent Petitioner is asserting that actual innocence constitutes a free-standing claim for habeas corpus relief, that question remains unresolved by the United States Supreme Court. <u>See</u> <u>McQuiggin v. Perkins</u>, 133 S.Ct. 1924, 1931 (2013) (recognizing that the issue of whether a freestanding

10

claim of actual innocence presents a claim for habeas relief
remains unresolved).  However, in this Circuit, precedent forbids
granting federal habeas relief for freestanding, non-capital claims
of actual innocence.[7]  Rozzelle v. Sec'y, Fla. Dep't of Corr., 672
F.3d 1000, 1010-11 (11th Cir.) (per curiam) (citing Herrera, 506 at
400), cert. denied, 133 S.Ct. 351 (2012); Jordan v. Sec'y, Dep't of
Corr., 485 F.3d 1351, 1356 (11th Cir.), cert. denied, 552 U.S. 979
(2007).  In Herrera, 506 U.S. at 400, the Supreme Court noted that
"[c]laims of actual innocence based on newly discovered evidence
have never been held to state a ground for federal habeas relief
absent an independent constitutional violation occurring in the
underlying state criminal conviction."  The Supreme Court
explained:  "[t]his rule is grounded in the principle that federal
habeas courts sit to ensure that individuals are not imprisoned in
violation of the Constitution - not to correct errors of fact."
Id.

### III.  Equitable Tolling

The Petition, filed on August 18, 2010, is due to be dismissed
as untimely unless Petitioner can avail himself of one of the
statutory provisions which extends or tolls the limitations period.
The United States Supreme Court has established a two-prong test
for equitable tolling, stating that a petitioner "must show '(1)

---

[7] The Court recognizes that Petitioner "pleads actual
innocence" in the first ground of his Petition.  Petition at 4.

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted).    The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted.    Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (per curiam) (citations omitted). Petitioner simply has not met the burden of showing that equitable tolling is warranted.

### IV.  Actual Innocence

The Petition is untimely; however, Petitioner's claim of actual innocence could serve as a gateway to consideration of constitutional claims time-barred under AEDPA. Under Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218 (11th Cir. 2000), this Court has a duty to address the factual issue of whether the Petitioner can make a showing of actual innocence, and this question is to be

addressed before addressing the constitutional issue of whether the Suspension Clause requires such an exception.  In light of this duty, the Court initially required Respondents to supplement the record with the trial court record, including the transcript of the trial proceedings, any post-conviction evidentiary hearings, and any documents not previously submitted to the Court.  Order (Doc. #14).  After a thorough review of the record, the Court appointed counsel for Petitioner to seek a deoxyribonucleic acid (DNA) expert and to prepare for an evidentiary hearing.  Orders (Docs. #17 & #18).

In response, Petitioner filed a Designation of DNA Expert (Doc. #30) on February 22, 2013.  In addition, he submitted a pre-evidentiary hearing brief referencing the analysis of the DNA reports by Dr. Gary Litman, Petitioner's DNA expert.  (Doc. #36). The state also filed a pre-evidentiary hearing brief.  (Doc. #37). Evidentiary proceedings were conducted on August 5, 2013 and September 4, 2013.  Petitioner and Dr. Litman provided sworn testimony.

At this stage, Petitioner's burden is heavy, but not insurmountable.  In order to meet the standard, Petitioner "must show that it is *more likely than not* that *no reasonable juror* would have convicted him in the light of the new evidence." Kuenzel v. Comm. Ala. Dep't of Corr., 690 F.3d 1311, 1314-15 (11th Cir. 2012) (per curiam) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct.

851, 867 (1995)), <u>cert</u>. <u>denied</u>, 133 S.Ct. 2759 (2013).  New evidence may be presented by the Petitioner in an attempt to meet this standard, and it may include affidavits, declarations, grand jury testimony, and scientific evidence.  <u>Id</u>. at 1316-17.  The scientific evidence need not be "[i]rrefutable scientific evidence establishing innocence."  <u>Id</u>. at 1316.  However, review is only permitted in "extraordinary" cases, <u>id</u>., that is, when there is new evidence "of the powerful kind."  <u>Id</u>. at 1318.

Of import, in order to meet his burden, Petitioner must offer reliable evidence "that was not presented at trial."  <u>Johnson v. Hooks</u>, 138 F. App'x 207, 208 (11th Cir. 2005) (per curiam).  This can be scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.  <u>Lindley v. Schriro</u>, No. 06-01528-PHX-DGC, 2007 WL 2320535, at *4 (D. Ariz. Aug. 10, 2007) (citation and quotation omitted).  Also, in deciding whether Petitioner has met his burden of showing actual innocence, the district court may consider the credibility of the witnesses.  <u>Id</u>. at *5 (citation omitted).

After thorough consideration of the record before the Court, including the evidentiary proceedings, the Court finds that Petitioner has not made the requisite showing.  Again, to make a showing of actual innocence, Petitioner must show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  <u>Schlup v. Delo</u>, 513

U.S. 298, 327 (1995).  In assessing the adequacy of a petitioner's showing, the Supreme Court has stated:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; **rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.**

Id. at 329 (emphasis added); see also Sibley, 377 F.3d at 1205 (stating same).  Moreover, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." McQuiggin v. Perkins, 133 S.Ct. at 1935. Again stressing that "the Schlup standard is demanding[,]" the Supreme Court stated: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 1936 (quoting Schlup, 513 U.S. at 316).

Here, although Petitioner has offered some new reliable evidence that was not available at the time of trial, he has not produced sufficient exculpatory scientific evidence, trustworthy

15

eyewitness accounts, or critical physical evidence to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of new evidence.  This is not an "extraordinary" case under the Schlup standard.  While Petitioner's new evidence raises questions about the reliability of his trial result, as was the case in Herrera, 506 U.S. at 400, the question remains as to what type of relief would be available if a petitioner meets the "probable innocence" standard:

> The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner, or in a capital case a similar conditional order vacating the death sentence.  Were petitioner to satisfy the dissent's "probable innocence" standard, therefore, the District Court would presumably be required to grant a conditional order of relief, which would in effect require the State to retry petitioner 10 years after his first trial, not because of any constitutional violation which had occurred at the first trial, but simply because of a belief that in light of petitioner's new-found evidence a jury might find him not guilty at a second trial.

Id. at 403.  It is far from clear that this would produce a more reliable determination of guilt or innocence, since "the passage of time only diminishes the reliability of criminal adjudications." Id.

Significantly, "the gateway actual-innocence standard is by no means equivalent to the standard of Jackson v. Virginia, 443 U.S.

16

307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," the standard governing claims of insufficient evidence.  House v. Bell, 547 U.S. 518, 538 (2006) (internal quotation and citation omitted).  Instead, this Court must assess how reasonable jurors would react to the "overall, newly supplemented record."  Id.

The record reflects the following.  Cheryl Wiggins, one of the eyewitnesses, testified that she recognized Petitioner after she grabbed the mask and bandana from the burglar's face.  Ex. 15 at 66-67, 91.  She testified that Petitioner wore the bandana underneath the mask.  Id. at 91.  She also testified that she recognized Petitioner's voice.  Id. at 66.  Additionally, she attested that Petitioner was previously known to her.  Id. at 59-60.  Melvin Wiggins, Sr., another eyewitness, testified that he had previously known Petitioner.  Id. at 98-99.  He too stated that he recognized Petitioner during the crime.  Id. at 102.  Although the results from the STR (short tandem repeat) DNA typing showed that Petitioner was excluded as a contributor to the DNA profile as a wearer of the mask,[8] he could not be similarly excluded from the minor component of the DNA profile as a wearer of the bandana.

---

[8] Of import, at trial, Petitioner entered into a stipulation regarding the wearing of the mask, stating that DNA evidence was found, but there were multiple donors, and Petitioner "could neither be identified or excluded as a possible donor of the DNA that was found on State's Exhibit 5 [the mask]."  Ex. 23 at 151. Based on the STR lab results, Dr. Litman testified that Petitioner was excluded as a contributor to the DNA profile as a wearer of the mask.

Both eyewitnesses had a demonstrated dislike for the Petitioner, a fact that was made known to the jury. Ex. 15 at 74, 111, 362.  The eyewitness testimony from these two eyewitnesses remains uncontradicted by the newly submitted scientific evidence.  Indeed, Dr. Litman testified that it is possible to wear a mask over a bandana and not leave DNA on the mask.  Although Dr. Litman testified that Petitioner can neither be identified or excluded as a contributor to the minor component of the DNA profile as a wearer of the bandana, this is simply not enough scientific evidence to show that it is more likely than not that no reasonable juror would have convicted Petitioner in the light of the new evidence.

Although the Court does not have complete confidence in the jury's verdict, and the Court is not entirely convinced that a jury, upon re-trial, if presented with the new DNA test results along with supporting expert analysis, would reach the same result,[9] Petitioner has not met his substantial burden.  "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing

---

[9] Even the subsequent DNA test results from the bandana are of little probative value considering Dr. Litman's assessment that one in three individuals would possess the two alleles utilized for the statistical calculations.  See Petitioner Brown's Pre-Evidentiary Hearing Brief (Doc. #36) at 9 ¶ 29; Evidentiary Hearing, September 4, 2013, Petitioner's Witness: Dr. Gary W. Litman & Plaintiff's Exhibit 10, DNA Labs International February 6, 2008 Report, Table 1: Analysis of Y-Short Tandem Repeat Loci.

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (citations omitted).  Although Petitioner may have shown that a reasonable doubt exists in the light of the new evidence, he has not shown that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  Therefore, in this instance, the gateway should not be opened.

Under the circumstances at bar, Petitioner has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him.  For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).  The Court will, however, grant a certificate of appealability on the issue of whether Petitioner's new evidence meets the demanding "Schlup gateway standard" to consideration of constitutional claims time-barred under AEDPA.

In adopting AEDPA, Congress was aware of the importance of the Great Writ, as it "plays a vital role in protecting constitutional rights." In re Hill, 715 F.3d 284, 306 (11th Cir. 2013) (citation and quotation omitted).  See U.S. Const. art. I, § 9, cl.2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").  Although "[j]ustice is the ultimate goal in the

19

grant of the Writ[,]" and "finality is desirable[,]" the courts "have increasingly come to define what is 'just' by what our procedural rules permit." Rozier v. United States, 701 F.3d 681, 690 (11th Cir. 2012) (Hill, J., dissenting), cert. denied, 133 S.Ct. 1740 (2013).  Unfortunately for Petitioner, procedural rules and established precedence preclude the Court from reaching the merits of this case.

### V. Certificate of Appealability

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is warranted on the issue of whether Petitioner's new evidence meets the demanding "Schlup gateway standard" to consideration of constitutional claims time-barred under AEDPA. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

The Court will grant a certificate of appealability because jurists of reason would find it debatable whether Petitioner has satisfied his burden to show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  If so, this would constitute a gateway to consideration of Petitioner's constitutional claims time-barred under AEDPA.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  Respondents' request to dismiss this case with prejudice (Doc. #8) is **GRANTED.**

2.  This case is **DISMISSED with prejudice.**

3.  The Clerk of the Court shall enter judgment dismissing this case with prejudice and shall close this case.

4.   The Clerk shall terminate any pending motions.

5.   If Petitioner appeals the dismissal of the Petition, the Court **grants a certificate of appealability** on the issue of actual innocence as a gateway to consideration of constitutional claims time-barred under AEDPA.   Because this Court has determined that a certificate of appealability is warranted, Petitioner may proceed on appeal as a pauper.

**DONE AND ENTERED** at Jacksonville, Florida this 23rd day of September, 2013.

ROY B. DALTON, JR.
United States District Judge

sa 9/23
c:
Recardo Brown
Counsel of Record